UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 2:17-CR-12 |
| v. | ) | |
| | ) | JUDGE GREER |
| JEREMY MICHAEL WILSON | ) | |

## PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Jeremy Michael Wilson, and the defendant's attorney, Aaron Chapman, have agreed upon the following:

1. The defendant will plead guilty to the following count(s) in the indictment:

Lesser included offense of Count One, that is, a conspiracy to distribute at least 5 grams but less than 50 grams of methamphetamine (actual), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

The punishment for this offense is as follows: a minimum mandatory 5 years up to 40 years imprisonment, a fine of up to $5,000,000.00, four years to life on supervised release, and a mandatory $100.00 assessment.

2. In consideration of the defendant's guilty plea(s), the United States agrees to move the Court at the time of sentencing to dismiss the remaining count(s) against the defendant in this indictment.

3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime(s) charged.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of

the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

On July 20, 2016, a search warrant was applied for and obtained in the Eastern District of Tennessee for text message content stored in the accounts of telephone number (276) 385-0083 (Jacob Armstrong). In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in those accounts from July 6, 2016 to July 17, 2016. The following is an excerpt from the search warrant results:

**July 6, 2016**

(423) 491-9477 (Defendant) to (276) 385-0083 (Jacob Armstrong), "*We're out toward town. Need to get that $ from you*"

**July 7, 2016**

(276) 385-0083 (Jacob Armstrong) to (423) 491-9477 (Defendant), "*Can I come on back now? You good? If you don't answer or text back then I'm gonna come on back out there*"

Defendant to Armstrong, "*Hey it's wifey. I just got home from getting the boys and he's still asleep. Is everything ok?*"

Armstrong to Defendant, "*I need to talk to Cody. I also need to make some money cause I gotta be at court in the morning in Knoxville and I'm supposed to make my bond payment while I'm there so I need him up*"

These texts reflect that Jacob Armstrong attempted to contact defendant to ascertain the availability of methamphetamine ("*You good?*"). Armstrong had a text message conversation with Margie Wilson ("*wifey*") about Cody Blevins and how Armstrong needed to sell methamphetamine to make money for a bond payment (regarding a May 28, 2016 arrest in which Armstrong was arrested for possession with the intent to distribute a controlled substance in Knoxville, TN).

**July 9, 2016 (1:10 am)**

2

(423) 491-9477 (Defendant) to (276) 385-0083 (Jacob Armstrong), *"I'm good in am bro. 9 or so bro"*

Armstrong to (423) 646-0462, (423) 963-9621, (276) 494-6584 and (423) 383-1975, *"It's gonna be in the morning around 9 they say"*

In these texts, defendant advised Jacob Armstrong that he would have methamphetamine by 9:00 a.m. Armstrong then notified his drug customers about the time.

**July 9, 2016 (5:56 am)**

(276) 385-0083 (Jacob Armstrong) to (423) 491-9477 (Defendant), *"What's up homeboy?"*

Armstrong to (423) 217-2527 (Mark Morrison), *"Please call me back cause I need that money to go pick up that shit now"*

**July 9, 2016 (7:10 pm)**

(423) 967-2328 (Tammy Goodson) to Armstrong, *"How much do you have"*

Armstrong to Goodson, *"Not much at all but I'm going to get more"*

**July 10, 2016 (1:52 a.m.)**

Armstrong to Defendant, *"I picked up girl and we came out to see you guys but the trucks not here. I figured you'd be back by now what's up…"*

Defendant to Armstrong, *"Be there in 5"*

(423) 217-2527 (Mark Morrison) to Armstrong, *"I don't know what happened earlier I couldn't hear u an the phone went dead"*

Armstrong to Morrison, *"I wasn't getting any signal. I'm out here picking up now"*

Morrison to Armstrong, *"Did he give you more this time"*

Armstrong to Morrison, *"He gave me 2"*

Morrison to Armstrong, *"O or b"*

Armstrong to Morrison, *"B"*

Morrison to Armstrong, *"Damn that sux I was counting on making a lil bet"*

3

Armstrong to Morrison, "*Yea me too*"

Morrison to Armstrong, "*But at least he gave u something*"

Armstrong to Morrison, "*True*"

In these texts Jacob Armstrong communicated with defendant to arrange to pick up methamphetamine. Armstrong communicated with Mark Morrison to pick up money for the purchase of methamphetamine. Armstrong advised Tammy Goodson that he was running low on methamphetamine and took her with him to purchase more from defendant. Armstrong advised Morrison that defendant only provided him with two (2) one-eighth (1/8) ounce quantities (commonly referred to as "8 ball" or "*b*") of methamphetamine as opposed to two (2) ounces ("*o*").

On July 29, 2016, a search warrant was applied for and obtained in the Eastern District of Tennessee for text message content stored in the accounts of telephone number (423) 491-9477 (Defendant). In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in those accounts from July 16, 2016 to July 26, 2016. The following is an excerpt from the search warrant results:

**July 21, 2016**

(423) 967-0362 (Corey Gibson) to (423) 491-9477 (Defendant), "*Anything ever change for ya, Im tryna watch that half time show*"

Defendant to Gibson, "*Nothing here. U?*"

Gibson to Defendant, "*Everythings priced out tha ass, going to K town in cpl hr call when I get there*"

Defendant to Gibson, "*Ok*"

(423) 274-4041 (Lani Hutchison) to Defendant, "*…I'm putting money together to go pick up but as soon as I get it all worked out so I can go grab something, I'll bring y'all something I promise. Y'all are good people and have looked out for me, I'll make sure I return the favor*"

4

Defendant to Hutchison, "*Sounds good. Just holler before you head out and make sure that we're home.*"

Hutchison to Defendant, "*Okay*"

In these texts, defendant communicated with Corey Gibson and Lani Hutchison. Gibson ordered ½ of an eight ball of crystal methamphetamine ("*halftime show*"), which defendant did not have. Gibson advised defendant that he would go to Kingsport, TN ("*K town*") to purchase methamphetamine. Hutchison advised defendant that she was collecting money in order to purchase methamphetamine and would make sure defendant got some.

**July 22, 2016**

(423) 491-9477 (Defendant) to (423) 274-4041 (Lani Hutchison), "*Any luck?*"

Hutchison to Defendant, "*Finally.*"

Defendant to Hutchison, "*Leaving the camper in just a min. Be there in about 30 mins. Don't go anywhere! Lol!*"

(276) 385-0083 (Jacob Armstrong) to Defendant, "*Im headed out to your spot now Ill see you in aboit 15 min*"

In these text messages, defendant communicated with Lani Hutchison and Jacob Armstrong. Defendant arranged to pick up crystal methamphetamine from Hutchison, but Armstrong advised Defendant that he would drop it off.

**July 23, 2016**

(423) 268-0340 (Tracfone) to (423) 491-9477 (Defendant), "*I have over $1,000 cash on me I need work now*"

Defendant to (423) 274-4041 (Lani Hutchison), "*Y'all good?*"

Hutchison to Defendant, "*Yeah*"

(423) 383-0813 (Jacob Armstrong) to Defendant, "*Damn bro I picked up quite a bit you can't answer the phone for me*"

5

Defendant to Armstrong, "*I'm heading to campground be there in 45 minutes. Where you is*"

Defendant to (423) 341-9653 (Charles Blevins), "*It's probably gonna be later this morning 2 that owe me can't get funds till they pass go lol and I do better having it upfront with this dude just to be honest*"

In these texts, defendant communicated with Lani Hutchison, Jacob Armstrong, Charles Blevins and an unknown user of a Tracfone. The unknown user advised defendant that he had $1,000.00 with which to purchase methamphetamine ("*work*"). Defendant subsequently contacted Hutchison to ascertain if she had methamphetamine. Armstrong obtained the methamphetamine from Hutchison and arranged to deliver it to defendant. Defendant advised Blevins that he wouldn't have additional methamphetamine until he collected money from two (2) individuals who owed.

**July 25, 2016**

(423) 612-4663 (Roderick McMorris) to (423) 491-9477 (Defendant), "*Who's this*"

Defendant to McMorris, "*Jray?*"

McMorris to Defendant, "*Ya*"

Defendant to McMorris, "*J Wls*"

McMorris to Defendant, "*Who is tgis*"

Defendant to McMorris, "*Wilson*"

McMorris to Defendant, "*Which Wilson*"

Defendant to McMorris, "*Jerm, damn bruh you claim me on ya taxes!!*"

McMorris to Defendant, "*Are good bro wt u know good*"

McMorris to Defendant, "*Leat me hold a game I'm doing bad bro*"

Defendant to McMorris, "*Hey, it's wifey. He just fell asleep like 30 mins ago. I'll let him know that you txt. Ttyl*"

6

McMorris to Defendant, "*Thank u*"

In these texts, Roderick McMorris contacted defendant to determine who was utilizing that particular cellular telephone. Defendant identified himself ("*Jerm Wilson*"), and McMorris proceeded to request 1/8 ounce of methamphetamine (commonly referred to as an "*8 ball*" or a "*game*") from defendant. Defendnat's wife, Margie Wilson ("*wifey*") responded to McMorris.

On October 27, 2016, a search warrant was applied for and obtained in the Eastern District of Tennessee for text message content stored in the accounts of telephone number (404) 764-6222 (cellular telephone utilized by Quinton Hatcher). In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in those accounts from October 8, 2016 to October 27, 2016. The following is an excerpt from the search warrant results:

**October 27, 2016**

(404) 764-6222 (Quinton Hatcher) to (423) 491-9477 (Defendant), "*What's up stranger you don't fuck with black folks anymore*"

Defendant to Hatcher, "*Thought you didn't fuck with us whites! Tried calling you a couple times*"

Defendant to Hatcher, "*What's up? You know about a 16th?*"

Hatcher to Defendant, "*I got you*"

Defendant to Hatcher, "*Damn that would be fucking sweet! I'm in the tree, do I need to come to you or you got a ride?*"

Hatcher to Defendant, "*Come by*"

Defendant to Hatcher, "*How much?*"

Hatcher to Defendant, "*Dollar ten*"

Defendant to Hatcher, "*K be there within the hour.*"

Hatcher to Defendant, "*Ok*"

7

In these texts, Quinton Hatcher agreed to sell 1/16 ounce of methamphetamine to Defendant for $110.00 ("*Dollar ten*").

On November 3, 2016, a traffic stop was conducted on a vehicle operated by Quinton Hatcher in Bristol, TN. Hatcher was subsequently placed under arrest for driving with a suspended license. Seized from Hatcher at the time of his arrest was a cellular telephone utilizing telephone number (404) 764-6222. A search of this telephone revealed the following text messages:

**October 28, 2016**

(423) 491-9477 (Defendant) to (404) 764-6222 (Quinton Hatcher), "*Hey bro, its Jeremy. You still good on going to the ballgame?*"

Defendant to Hatcher, "*Hey bro its Jeremy, you still want that Note 4 of mine, ol girl backed out on that game.*"

Hatcher to Defendant, "*I'm leaving Kingsport you still want that*"

Defendant to Hatcher, "*Trade on the Note4? Other girl backed out. I know a few smalls, I'll leave my nina' if ya float that game.*"

Defendant to Hatcher, "*I need a come up and I ain't fucked up with leaving ya some collateral u know that.*"

Defendant to Hatcher, "*I got money*"

During these texts, defendant ordered 1/8 ounce of methamphetamine ("*ballgame*" "*game*") from Quinton Hatcher. Hatcher advised Defendant that he had picked it up in Kingsport. Defendant offered to trade a Note 4 (cellular telephone) to Hatcher in exchange for the methamphetamine. Defendant also offered to leave a 9 mm handgun ("*nina'*") with Hatcher as collateral for the methamphetamine.

Defendant agrees that he conspired with his co-defendants to distribute methamphetamine (actual) and that he is responsible for the distribution of at least 35 grams but less than 50 grams of methamphetamine (actual).

8

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to plead not guilty;

    b) the right to a speedy and public trial by jury;

    c) the right to assistance of counsel at trial;

    d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    e) the right to confront and cross-examine witnesses against the defendant;

    f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    g) the right not to testify and to have that choice not used against the defendant.

6. The parties agree that the appropriate disposition of this case would be the following as to each count:

    a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

    b) The Court will impose special assessment fees as required by law; and

    c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the

Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8. The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the

10

Case 2:17-cr-00012-JRG-MCLC Document 203 Filed 06/02/17 Page 10 of 14 PageID #: 1043

authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

10. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to

11

the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

    a)    The defendant will not file a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

    a)    The defendant will not file a direct appeal of the defendant's conviction(s) or sentence except as provided in paragraph 2. The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.]

    b)    The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

    c)    The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be

sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

11. This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

12. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

13. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the

13

defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

NANCY STALLARD HARR
UNITED STATES ATTORNEY

6-2-17
Date

By: *(signature)*
J. GREGORY BOWMAN
Assistant United States Attorney

6/1/17
Date

*(signature)*
JEREMY MICHAEL WILSON
Defendant

6/1/17
Date

*(signature)*
AARON CHAPMAN
Attorney for the Defendant